**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

                                 )

**RAYMOND W. ACCOLLA,**        )

            **Petitioner,**    )     **08 Civ. 3223 (SCR)(LMS)**

        *- against -*      )

                       )     **REPORT AND**
**UNITED STATES OF AMERICA**   )    **RECOMMENDATION**

         **Respondent**.    )
_____)

TO:   **THE HONORABLE STEPHEN C. ROBINSON,**
       **UNITED STATES DISTRICT JUDGE**

      Petitioner Raymond W. Accolla ("Petitioner"), proceeding pro se, files this Petition

("Petition") pursuant to 28 U.S.C. § 2255.  On October 21, 2003, Felony Indictment 03 Cr. 1250

("Indictment") was filed in the Southern District of New York, charging Petitioner with the

following three counts: (1) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. §

1951; (2) Hobbs Act robbery, in violation of the same statute; and (3) using, carrying, or

brandishing a firearm during the commission of a crime of violence, in violation of 18 U.S.C. §

924(c)(1)(A)(ii) and (2).  Resp't Mem. of Law Ex. A[1] at 6 (Indictment).  A Superseding Felony

Information ("Information") charged Petitioner with conspiracy to commit bank fraud, in

violation of 18 U.S.C. § 371.  Ex. A at 9 (Information).  On November 3, 2003, Petitioner

entered guilty pleas to Count Two and Count Three of the Indictment and Count One of the

Information.  Pet. at 2.  On March 25, 2005, Petitioner was sentenced by Your Honor in the

_____

      [1]Herein, Exhibits A-D refer to those annexed to Respondent's Memorandum of Law.

United States District Court for the Southern District of New York, White Plains, to 174 months imprisonment. Pet. at 2. Petitioner is currently incarcerated at Law Security Correctional Institution, in Butner, North Carolina.

Petitioner seeks habeas relief on three grounds: (1) Petitioner's initial attorney, Michael Keesee ("Keesee"), provided ineffective assistance of counsel; (2) Petitioner's subsequent attorney, Randy Steinhauser ("Steinhauser"), provided ineffective assistance of counsel; and (3) the evidence is insufficient to establish Petitioner used, carried, or brandished a firearm on any victim. Pet. at 5-6. Respondent argues that the instant Petition should be denied in its entirety because Petitioner's claims either are without merit or are procedurally defaulted. See generally Resp't Mem. of Law. For the reasons set forth below, I conclude, and I respectfully recommend that Your Honor should conclude, that this § 2255 Petition should be denied.

## I. BACKGROUND

The history of Petitioner's underlying criminal case and subsequent plea and sentencing is set forth at length in Respondent's Memorandum in Opposition. See Resp't Mem. of Law at 1-22. The relevant facts are set forth below.

### A.    The Crime

On the morning of June 5, 2002, Vincenzo Devito ("Devito"), a member of the Genovese crime family, visited the office of Lawrence Hecht ("Hecht"), an accountant. Resp't Mem. of Law at 3. Devito informed Hecht that certain individuals were interested in meeting one of Hecht's clients, the victim, Joseph Raso ("Raso"). Id. As Devito was leaving Hecht's office, Preston Young ("Young") and Michael Williamson ("Williamson") entered Hecht's office

unannounced.  Id.  Young told Hecht that he needed to get inside Raso's residence, and that if Hecht did not cooperate, Hecht would be harmed.  Id. at 3-4.  Hecht was then instructed to drive Young and Williamson to the victim's residence in Nyack, New York.  Id. at 4.  As Hecht was driving, Petitioner and co-defendants Daniel Feliciano ("Feliciano") and Daniel Soto ("Soto") followed in another car.  Id.  At one point during the drive, Petitioner began to drive Hecht's car.  Id.

Upon arriving at Raso's house, Petitioner and his co-defendants discovered that Raso was not home.  Id.  When Raso, along with several guests, returned home, Hecht and Soto approached him and asked to speak with him inside.  Id.  Once inside, Soto brandished a firearm and Feliciano entered to assist Soto.  Id.  Soto and Feliciano then tied up Raso and his two guests with duct tape and ties, and proceeded to take jewelry and approximately $100,000 cash from the victim's residence.  Id. at 5.  During the home invasion, Petitioner and Young were in communication with Feliciano and Soto via cell phone about whether or not to harm Raso when he refused to tell the robbers where he stored his cash.  Id.  For his role in the robbery, Petitioner received $50,000.  Id.

**B.    The Plea Agreement**

On October 21, 2003, Petitioner was named, along with his co-conspirators, in a three-count indictment charging him with: (1) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951; (2) Hobbs Act robbery, in violation of the same statute; and (3) using, carrying, or brandishing a firearm during the commission of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and (2).  Ex. A at 6 (Indictment).  Petitioner was also charged, via a Superseding Felony Information, with conspiracy to commit bank fraud, in violation of 18 U.S.C.

3

§ 371.  Id. at 9 (Information).  On November 5, 2003, Petitioner appeared before the undersigned

United States Magistrate Judge, and pled guilty, pursuant to a plea agreement, to Counts Two

and Three of the Indictment, and Count One of the Information.  Ex. A at 17-52 (Plea Hearing);

See generally Ex. A at 11-16 (Plea Agreement).  In the Plea Agreement, the parties agreed, based

on the level of the offense and Petitioner's criminal history, that Petitioner's initial sentencing

guidelines range was 57 to 71 months.  Ex. A (Plea Agreement) at 13-14.  However, due to the

mandatory seven-year consecutive term of imprisonment required by the firearm charge,

Petitioner's final stipulated sentencing guidelines range was 141 to 155 months.  Id. at 14.  After

confirming that Petitioner wished to plead guilty to each of the three counts, Judge Smith found

that the plea was knowing and voluntary, and was supported by a factual basis for each of the

charges.  Ex. A at 49.

On February 19, 2004, the parties appeared for sentencing before Your Honor.  Ex. A at

54-58.  At the conference, Petitioner's then attorney, Michael Keesee, informed the Court that

Petitioner had retained a new attorney, Randy Steinhauser, and that Petitioner would likely move

to withdraw his guilty plea to the firearms charge.  Ex. A at 55-56.  On July 2, 2004, Petitioner

filed a Notice of Motion to Withdraw Guilty Plea for Count Three of the Indictment.  Ex. A at 62

(Notice of Motion to Withdraw Guilty Plea).  In support of the motion, Petitioner argued that

there were no facts to suggest Petitioner performed any act that directly facilitated or encouraged

the use or carrying of a firearm, as required by United States v. Medina, 32 F.3d 40 (2d Cir.

1994).  Ex. A at 67 (Affirmation in Support of Defendant's Motion to Withdraw Guilty Plea).  In

response, the Government argued that the Court should deny Petitioner's motion because the

evidence adduced at the plea proceeding demonstrated the defendant's guilt, pursuant to a

Pinkerton theory of liability.  Ex. A at 82 (Gov't Mem. in Opp. to Defendant's Motion to

Withdraw Guilty Plea).  At a conference before Your Honor on October 14, 2005, the

Government stated that if Petitioner chose to withdraw his guilty plea, the Government would

oppose any reduction in sentence and potentially seek to charge Petitioner with obstruction of

justice based upon his perjurious statements to the Grand Jury.  Ex. A at 106.  At a subsequent

conference before Your Honor on December 16, 2004, Petitioner withdrew the motion, and

Petitioner confirmed that he wanted to keep his guilty plea to Count Three of the Indictment.  Id.

at 117-18.  In deciding to withdraw the motion, Steinhauser cited the potential that the upcoming

Supreme Court case, United States v. Booker, 543 U.S. 220 (2005), might have in declaring the

sentencing guidelines unconstitutional.  Id. at 120-21.

### C.      Sentencing

On March 8, 2005, the parties again appeared for sentencing.  The Government argued

that if Steinhauser sought a term of imprisonment below the stipulated guidelines range set forth

in the plea agreement, the plea agreement would be vitiated, and the Government would seek an

enhancement for obstruction of justice based on Petitioner's perjurious testimony to the Grand

Jury.  Ex. A at 128-29.  The Court then entertained arguments from counsel regarding whether

the Court should follow the sentencing guidelines range, in light of the Supreme Court's then

recent ruling in Booker.  Id. at 130.  The Court concluded that under Booker, the sentencing

guidelines were advisory and not mandatory.  Id. at 134.  This meant that the Court would have

to determine the appropriate guidelines range and "make a judgment on whether or not there

[was] an obstruction of justice based on Accolla's Grand Jury testimony."  Id.  The prosecutor

reiterated that if Steinhauser was to seek a sentence below the plea agreement's stipulated

guidelines range, the Government would consider that a violation of the plea agreement.  Id. at 135-36.

Steinhauser then argued that Petitioner should receive a sentence "below the stipulated guidelines range."  Id. at 136.  Steinhauser argued that by combining the guidelines sentence with the firearms charge, Petitioner's sentence would be "ridiculously harsh."  Id. at 137.  In support of a shorter sentence, Steinhauser cited Petitioner's failing health, his lack of recent criminal history, and the fact that there was no evidence that Petitioner did anything to obtain the gun.  Id. at 137.  Steinhauser then asked the court to sentence Petitioner to zero years for the Hobbs Act robbery charges, and the mandatory seven years for the firearm charge.  Id. at 140.  Steinhauser additionally objected to the imposition of an obstruction of justice charge against Petitioner, arguing that the Government sought the enhancement, in part, because Steinhauser had requested a sentence below the guidelines range.  Id. at 145-46.  The sentencing hearing was then adjourned.

On March 23, 2005, the parties again appeared for sentencing.  Ex. A at 154-95 (Sentencing).  After hearing arguments from both sides, the Court concluded that it was not bound by the original plea agreement between the parties.  Id. at 165-66.  The Court also found that Steinhauser had violated the plea agreement by asking for a lower sentence, and thus the Government was allowed to seek an obstruction of justice enhancement.  Id. at 166-67.  The Court concluded that Petitioner had perjured himself with regard to several topics in front of the Grand Jury, and assigned a guidelines range of 162 to 181 months.  Id. at 169.  Petitioner then addressed the Court concerning Petitioner's Grand Jury testimony and his role in the robbery.  Id. at 170-75.  After the Court dismissed Petitioner's apology as a "throwaway line," and found that

Petitioner was an organizer of the criminal activity, the Court sentenced Petitioner to a term of 174 months imprisonment.  Id. at 179, 188, 190.  The sentence consisted of 90 months on Count Two of the Indictment and Count One of the Information, to run concurrently, plus an additional 84 months on Count Three of the Indictment, to run consecutively.  Id. at 188-89.  The Court also ordered Petitioner to serve five years supervised release, and to pay a mandatory $300 special assessment.  Id.  Petitioner was also ordered to pay restitution in the amount of $561,908.  Id.

      **D.**    **The Direct Appeal**

On appeal, Petitioner claimed his sentence should be vacated on the grounds of ineffective assistance of counsel.  See Ex. B (Brief for Defendant-Appellant).  Petitioner argued that his lawyer, Randy Steinhauser, pursued a sentence lower than that set forth in the plea agreement without considering the prejudice to his client.  Id. at 17.  Petitioner also claimed that Steinhauser failed to contest an obstruction of justice enhancement, instead permitting Petitioner to attempt to explain his perjurious testimony.  Id. at 27.  Petitioner argued that by requesting that his sentence be lower than the stipulated guidelines range, and thus breaching the plea agreement, Steinhauser allowed the government to seek an enhancement for obstruction of justice.  Id. at 28-29.  According to Petitioner, this caused Petitioner to receive a longer sentence than Petitioner would have received had his attorney not engaged in this particular strategy.  Id.  The Second Circuit dismissed Petitioner's appeal without prejudice, citing their aversion to addressing ineffective assistance of counsel claims on direct appeal due to the possibility of inadequate factual record.  United States v. Accolla, 253 Fed. Appx. 154 (2d Cir. 2007).

## II. DISCUSSION

### A.     Standard of Review

"It is well established that section 2255 is not intended to provide a remedy for 'all claimed errors in conviction and sentencing.' " Morales v. United States, 143 F.3d 94, 96 (2d Cir. 1998) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)).  Rather, "collateral attack on a final judgment in a criminal case is generally available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (internal quotation marks and citation omitted).  Pursuant to 28 U.S.C. § 2255, a federal prisoner in custody may seek to have his or her sentence vacated, set aside, or corrected on the following grounds: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) "the sentence is otherwise subject to collateral attack."  A § 2255 petitioner bears the burden of proving his or her entitlement to relief under § 2255 by a preponderance of the evidence.  Triana v. United States, 205 F.3d 36, 40 (2d Cir. 2000) (citing Harned v. Henderson, 588 F.2d 12, 22 (2d Cir. 1978)).

### B.     Ineffective Assistance of Counsel (Petitioner's Claims I, II, IV and V)

The Sixth Amendment right to counsel is the right to effective assistance of counsel. McMann v. Richardson, 379 U.S. 759, 711 (1970).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial can no longer be relied upon as having produced a just result."

Strickland v. Washington, 466 U.S. 668, 686 (1994).  Where a petitioner claims ineffective assistance of counsel, the court's ultimate focus must be on "the fundamental fairness of the proceeding whose results are being challenged."  Id. at 696.  In order to prevail on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in Strickland, a habeas petitioner must satisfy a two part test.  Id.  First, he or she must show that counsel's performance "fell below an objective standard of reasonableness."  Id. at 688.  Second, the petitioner must show that the deficient performance prejudiced the defense.  Id. at 692.  This requires showing that there is a "reasonable probability" that but for counsel's error, the outcome would have been different.  Id. at 686.

In order to satisfy the first prong of the Strickland test, a petitioner must show that counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687.  The inquiry must be whether counsel's assistance "was reasonable considering all the circumstances," however "no particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."  Id. at 688-689.  In assessing the deficiency of counsel, there exists a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  In addition, a fair assessment requires that "every effort must be made to eliminate the distorting effects of hindsight," as there are "countless ways to provide effective assistance in any given case."  Id. at 689.  Strategic choices made after a thorough investigation of the law and facts are "virtually unchallengeable."  Id. at 690.

Even if a petitioner shows that counsel made unreasonable errors, the petitioner "must

9

show that [such errors] actually had an adverse effect on the defense." Id. at 693.  It is not enough for defendant to show that an error had "some conceivable effect on the outcome of the proceeding." Id.  Rather, the reviewing court must assess "whether, absent counsel's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different." Mayo v. Henderson, 13 F.3d. 528, 533 (2d Cir. 2004)(internal quotes and citation omitted).  A reasonable probability is "a probability sufficient to undermine the confidence in the outcome." Id. (quoting Strickland, 466 U.S. at 694).  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffective claim." Strickland, 466 U.S. at 700.

While a defendant is required to demonstrate prejudice to prevail on most claims of ineffective assistance of counsel, the same showing is not necessary when a defendant's counsel is burdened by an actual conflict of interest.  Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980). An actual conflict of interest exists only if defense counsel "actually represented conflicting interests" and the conflict "adversely affected the lawyer's performance." Id. at 350.  To demonstrate adverse effect, a defendant must demonstrate that an "actual lapse in representation" resulted from the conflict.  United States v. Stantini, 85 F.3d 9, 16 (2d Cir. 1996).  To prove a lapse in representation, a defendant must demonstrate that "some plausible alternative defense strategy might have been pursued" but was not, and that "the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  Winkler v. Keane, 7 F.3d 304, 309 (2d Cir. 1993).  The conflict must be real, and not some "attenuated hypothesis having little consequence to the adequacy of the representation."  United States v. Fahey, 769 F.2d 829, 835 (2d Cir. 1985).

### 1.   *Petitioner's Claim that Michael Keesee Provided Ineffective Assistance of Counsel is Meritless.*

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. 690. The court must then determine whether "the identified acts or omissions were outside the wide range of professionally competent assistance." Id. Petitioner's claim that he received ineffective assistance of counsel from Michael Keesee does not pass the Strickland test.  In late 2003, the FBI summoned Petitioner to its White Plains office to answer some questions.  Pet. Mem. of Law at 2.  When FBI agents began asking about his involvement in bank fraud and a recent robbery in Piermont, New York, Petitioner asked for an attorney.  Id.  Petitioner claims that the next day, FBI agent John Flanagan ("Flanagan") arranged to have Keesee represent Petitioner.  Id.  Petitioner claims that Keesee did not inform Petitioner of his rights, that Keesee remained silent while Petitioner was being questioned, that he failed to provide a viable defense, and that he allowed Petitioner to incriminate himself.  Id. at 3-4. Petitioner also alleges that during his Grand Jury testimony, Keesee instructed him that "whatever they ask you, just say yes."  Id. at 4.   Petitioner further claims that Keesee's close friendship with agent Flanagan and his appointment by the FBI created a conflict of interest.  Id. at 4-5.

Keesee flatly refutes each allegation made by Petitioner.[2]  In his affirmation, Keesee

---

[2]The date of Keesee's appointment to represent Petitioner is a bit confusing.  Keesee asserts that he was contacted by the AUSA on September 11, 2003, because he was scheduled for CJA duty on the following day.  He believed the Government had obtained court authorization for him to represent Accolla, and he therefore undertook to represent Accolla by speaking to him by phone and later in person, and by speaking to the AUSA and the FBI agent.  Ex. D (Keesee

asserts that on September 13, 2003, he met Petitioner for the first time, and spent two hours

going over the allegations against him, including informing Petitioner of his rights and his option

to retain an attorney of his choosing.   Ex. D (Keesee Aff.) at ¶¶ 11-12, 20.   After a lengthy

discussion of the facts, Petitioner agreed to speak to the FBI and the Assistant United States

Attorney.   Id. at ¶¶ 10-13.   Keesee further contends that he did not remain silent at the subsequent

meeting with the FBI on September 16, 2003, but conferred privately several times with his

client.   During the proffer, the AUSA provided information to Keesee that Petitioner had failed

to share with Keesee.   Id. at ¶¶ 22-24.   Finally, Keesee notes that he never instructed his client to

"just say yes" to whatever was asked of him at the Grand Jury (See Pet. Mem. of Law at 4).   In

fact, Keesee did not yet represent Petitioner when Petitioner testified before the Grand Jury;

Petitioner's Grand Jury appearance took place before Mr. Keesee had any awareness of Petitioner

or his situation.   Id. at ¶¶ 15, 21, 26.   Keesee asserts that when he did represent Petitioner at his

proffer, he instructed Petitioner to tell the truth.   Id. at ¶ 26.   Petitioner provides no evidence

beyond his own statements that his accusations against Attorney Keesee are true.   A federal court

may dismiss a petition brought under § 2255 where the "claim is groundless and lacking in

substance" because it is based on "no more than thinly veiled and baseless allegations."

Costanzo v. United States, 758 F. Supp. 869, 875 (S.D.N.Y. 1990).   As this is the case here,

Petitioner's claim must be dismissed.

        Furthermore, Petitioner fails to demonstrate that Keesee's performance prejudiced him in

_____

Affirmation) at ¶¶ 6-11.   In fact, Keesee was not officially appointed to represent Accolla until he
was formally arrested and presented before the undersigned Magistrate Judge on September 25,
2003.   See docket sheet 03 CR 1250.   Despite this disconnect, Keesee was paid as CJA counsel
for his time representing Accolla starting on September 11, 2003.   Id. at ¶ 8.

any way.  As Keesee asserts in his affidavit, and as Petitioner acknowledged in his November 5, 2003, plea hearing before the undersigned, Petitioner was fully apprised of his options and he nevertheless entered the plea voluntarily.  Ex. A. at 27-29; Ex. D. at 29.  The plea agreement that Keesee brokered included a one-level reduction for timely notice and a two-level reduction for acceptance of responsibility.  Ex. A at 13.  Under Keesee's negotiated plea agreement for Petitioner, Petitioner's stipulated sentencing range was 141-155 months, a lesser sentence than Petitioner ultimately received.  Id. at 14.  Petitioner fails to raise any arguments that suggest his sentence would have been lower were it not for the allegedly ineffective assistance of Attorney Keesee.  Based on the assertions that Petitioner makes in his Petition, there is no reasonable probability that the outcome of the proceeding would have been different absent any alleged deficient performance.

Petitioner also fails to demonstrate that Keesee was laboring under an actual conflict of interest.  Petitioner's assertion that Keesee and Flanagan were "close friends" who conspired during Accolla's Grand Jury testimony to "convict and punish Accolla for not implicating himself and others in any fantastical organized crime ring" is devoid of supporting evidence.  Pet. Mem. of Law at 6.  Petitioner provides no evidence that Keesee and Flanagan were friends beyond a claim that his subsequent lawyer told him this was true.  Furthermore, Petitioner does not raise any plausible alternative defense strategy that might have been pursued were it not for Keesee's purported conflict of interest.  Keesee asserts in his affirmation that he "did not know Agent Flanagan before this case" and that the two "were not close friends, much less even acquainted with each other[.]"  Ex. D at ¶ 18.  For all of these reasons, Petitioner's claim that he was provided ineffective assistance of counsel by Attorney Keesee must be dismissed.

13

2.        ***Petitioner's Claim that Randy Steinhauser Provided Ineffective***
***Assistance of Counsel is Meritless.***

Petitioner claims Steinhauser was ineffective because he chose to argue that Petitioner's sentence should be lower than the stipulated guidelines range and failed to contest the obstruction of justice enhancement.  <u>See</u> Pet. Mem. of Law.  Petitioner argues that due to Steinhauser's "grossly incorrect and unprofessional interpretation" of <u>Booker</u>, a higher sentence was risked without any reasonable expectation of a favorable outcome.  <u>Id.</u> at 11.  Respondent argues that Petitioner's criticisms of Steinhauser's performance are either "factually unsupported or 'unacceptably based on hindsight.' "  Resp't Memo in Opp. at 38 (quoting <u>United States v. Jones</u>, 918 F.2d 9, 11 (2d Cir. 1990)).

Petitioner cannot satisfy the first prong of the <u>Strickland</u> test requiring proof that counsel acted in an "objectively unreasonable" manner.  It was not unreasonable for Steinhauser to argue, based on <u>Booker</u>, that Accolla should be sentenced below the stipulated guidelines range.  The Supreme Court decided <u>Booker</u> in January, 2005, less than two months prior to Petitioner's March 8, 2005 sentencing hearing and, at the time, <u>Booker</u>'s impact on cases in which a guilty plea had been entered was unclear.  It was not unreasonable for Steinhauser to believe, in light of <u>Booker</u>, that the Court would not deem arguments in mitigation of Petitioner's sentence a breach of the plea agreement, and his choice to make such an argument was a strategic legal decision.  Despite the lack of success of Steinhauser's chosen strategy, "decisions that fall squarely within the ambit of trial strategy . . . if reasonably made, cannot support an ineffective assistance claim." <u>United States v. Eisen</u>, 974 F.2d 246, 265 (2d Cir. 1992).  Steinhauser made a number of plausible arguments as to why Petitioner should receive a sentence below the stipulated

14

guidelines range.  Steinhauser cited Petitioner's age, medical problems, family, and the emotional

trauma of missing his mother's funeral, as reasons for reducing Petitioner's sentence below the

guidelines range.  A. 137, 142-145, 172.  It was not unreasonable for Steinhauser to expect that

the Court would consider these factors when sentencing Petitioner.

Additionally, Petitioner claims that Steinhauser was ineffective because his decision to

argue for a lesser sentence prompted the Government to move ahead with obstruction of justice

charges.  Pet. Mem. of Law at 11-12.  The Government made clear to Steinhauser in a letter

dated February 28, 2005, and again at a hearing held before Your Honor on March 8, 2005, that

they would seek an upward shift in the sentencing range due to the newly added obstruction of

justice charge if counsel persisted in seeking a sentence lower than that stipulated in the plea

agreement, because the Government felt that counsel's request violated the terms of the plea

agreement.  Ex. A at 129.  This possibility was stated in Petitioner's presence, at a time when he

could have directed Steinhauser to alter his approach.  Id. at 129-36; 145-49.  Counsel thereafter

conferred about this issue with Petitioner and Petitioner directed Steinhauser's actions (e.g.

"After meeting with Mr. Accolla...we determined not to respond...Last night, Mr. Accolla

did...ask me to convey the following to the Court.")  See also Ex. A at 157.  After being given an

adjournment to formulate an argument in opposition to the Government's request, defense

counsel maintained that his argument to sentence Petitioner outside the guidelines range was

based on his interpretation of the recent Booker ruling and, in his estimation, was not a violation

of the plea agreement.  Ex. A at 157.  Thus, counsel believed that his request to sentence

Petitioner outside the guidelines was not a violation of the plea agreement, and if the Court had

been persuaded by that argument, then there would have been no need to address the obstruction

15

of justice issue, because it stemmed directly from the Government's contention that the plea

agreement had been violated.

Furthermore, Steinhauser argued that "should the Court believe that there was actually a

violation of the Plea Agreement and if the Court [was] going to consider the application for a two

level enhancement by the Government [based on the obstruction of justice charge], the Court

[should] give it little weight and recognize the fact that [Petitioner] did come very quickly and

allocute truthfully to the facts of the case." Ex. A at 158.  In other words, Steinhauser argued that

if the Court did not accept his interpretation of <u>Booker</u>, and did rule that the plea agreement had

been violated, that the Court should take into consideration the fact that Petitioner did allocute

truthfully at his plea, and the Court should not enhance his sentence based on that fact.  Although

ultimately the Court rejected Steinhauser's main argument regarding the plea as well as his

request in relation to the obstruction of justice charge, it was not unreasonable for him to believe

that the obstruction of justice charge would be negated if the Court determined that the plea

agreement had not been violated and, in the alternative, it was not unreasonable for him to argue

for leniency for his client in light of his truthful plea.[3]  These were strategic decisions made by

counsel at the time and such decisions should not be viewed through "the distorting effects of

hindsight."  <u>Strickland</u>, 466 U.S. at 689.  Therefore, Petitioner's claim that Steinhauser's

representation constituted ineffective assistance of counsel must be dismissed.

---

[3]Additionally, Petitioner himself argued that no obstruction of justice enhancement was
appropriate, because there were reasons which affected his decision about what to testify to in the
Grand Jury.  Ex. A at 173-74.  Thus, Petitioner agreed with and supported Steinhauser's
argument.

C.     **Petitioner's Claim that the Evidence was Insufficient to Establish his Guilt on the Firearm Charge Has Been Procedurally Defaulted (Petitioner's Claim III).**

Petitioner claims that there is not enough evidence to establish his guilt on Count Three of the Indictment for using, carrying, or brandishing a firearm during the commission of a crime of violence.  Pet. at 5.  Petitioner claims he never used, carried or brandished a firearm on any victim, and that the FBI received false information from Petitioner's co-conspirators in an attempt to "cop" a plea bargain.  Id.  Respondent argues that Petitioner's claim has been procedurally defaulted because he failed to raise it on appellate review.  Resp't Mem. in Opp. at 39.

"A motion under § 2255 is not a substitute for an appeal."  United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998).  Thus, if a petitioner fails to assert a claim on direct review, he or she is barred from raising the claim in a subsequent § 2255 proceeding unless he or she can establish both cause for the procedural default, and prejudice resulting therefrom.  See Billy-Eko v. United States, 8 F.3d 111, 113-14 (2d Cir. 1993)("It is well settled that where petitioner does not assert a claim on direct appeal, he [or she] is barred from raising the claim in a subsequent § 2255 proceeding unless he [or she] can establish both cause for the procedural default and actual prejudice resulting therefrom).  "Cause" under the cause and prejudice test must be something "external to the petitioner, something that cannot be fairly attributed to him [or her]."  Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993) (quoting Coleman v. Thompson, 501 U.S. 722, 753 (1991)).  Petitioner has not asserted any evidence of cause or prejudice to explain his failure to raise this issue on appeal.  In fact, Petitioner timely filed a direct appeal which raised only one

17

claim: ineffective assistance of counsel.

Additionally, a petitioner can circumvent the procedural bar at issue if he or she can show "actual innocence." To establish actual innocence, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him [or her]." Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995)). Petitioner has presented no evidence to satisfy this standard beyond his bald assertions that the Government did not prove their case against him. Therefore, Petitioner's claim has been procedurally defaulted and must be dismissed.

## CONCLUSION

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the Petition should be dismissed in its entirety. Petitioner has failed to make a "substantial showing of the denial of a Constitutional right," therefore I conclude, and respectfully recommend that Your Honor should conclude, that a certificate of appealability should not issue. 28 U.S.C. § 2253(c)(2). See United States v. Perez, 129 F.3d 255, 260 (2d Cir. 1997). I further conclude, and respectfully recommend that Your Honor should conclude, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438 (1962).

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the

Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Robinson.


Dated: August 2, 2010
          White Plains, NY


                                        Respectfully submitted,

                                        LISA MARGARET SMITH
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

Honorable Stephen C. Robinson, U.S.D.J.
300 Quarropas Street
White Plains, New York 10601

Raymond W. Accolla, 21581-053
Law Security Correctional Institution
P.O. Box 999
Butner, North Carolina 27509

John Patrick Collins, Jr., AUSA
U.S. Attorney's Office, SDNY
One St. Andrew's Plaza
New York, New York 10007

19